# UNITED STATES DISTRICT COURT

## DISTRICT OF MAINE

ARTEMIS COFFIN, GEORGE BAKER,
DARRELL FLANDERS, JAMES MINGO,
TERRENCE LYON, HAROLD SMITH,
ROBERT DEWITT, DUANE L. HANSCOM,
JOSEPH GAGLIARDI JR., TRINA VAZNIS,
RAYMOND MACDONALD, ROBERT P.
HEALEY, BARRY BRYANT, LEE
WHEATON and GALEN M. LANDER,

Individually and as Representatives of a class
of all persons similarly situated,

Plaintiffs

v.                                                          Civil No. 03-227-P-C

BOWATER INCORPORATED, GROUP
PROTECTION FOR EMPLOYEES OF
BOWATER INCORPORATED – GREAT
NORTHERN PAPER, INC. DIVISION,
BOWATER INCORPORATED POINT OF
SERVICE MEDICAL BENEFITS PLAN,
BOWATER INCORPORATED POINT OF
SERVICE MEDICAL PLAN, BOWATER
INCORPORATED BENEFIT PLAN and
BOWATER LIFE INSURANCE PLAN,

Defendants

Gene Carter, Senior District Judge

## ORDER DENYING PLAINTIFFS' MOTION TO COMPEL

This case arises out of the bankruptcy of Defendant Bowater, Inc.'s former wholly-owned

subsidiary, Great Northern Paper, Inc. (hereinafter "GNP").  Plaintiffs, fifteen former GNP

employees who assert claims on behalf of themselves and a proposed class, all retired from GNP during the period that Bowater owned GNP or during a short window following the sale of GNP to Inexcon of Maine, Inc. (hereinafter "Inexcon").  Subsequent to the sale to Inexcon, GNP filed for bankruptcy in the United States Bankruptcy Court for the District of Maine.  Plaintiffs now seek recovery of retiree health and welfare benefits and contend that Bowater is responsible for assuming benefit obligations owed to the GNP retirees.

Now before the Court is Plaintiffs' Motion to Compel (Docket Item No. 91) production of sixty-six documents from Defendant Bowater Inc.  Bowater indicates that is has now produced three of the documents in dispute, identified as entries 60, 438, and 440 on Bowater's initial privilege log, thereby leaving sixty-three documents at issue.  *See* Bowater's Opposition to Plaintiffs' Motion to Compel (Docket Item No. 94) at 1 n.1.  Plaintiffs assert that sixty-two of the requested documents reflect communications between counsel for Bowater and GNP made before the sale of GNP to Inexcon.  Plaintiffs state that the remaining document at issue reflects communications made between counsel for Bowater and GNP made after Bowater sold GNP to Inexcon.

GNP's trustee in bankruptcy has filed papers in the United States Bankruptcy Court for the District of Maine waiving GNP's attorney-client privilege with respect to "any communications or information occurring or dating prior to January 1, 2000," and has stated that "such communications or information may be used for any purpose in the *Coffin* case without regard to any such privilege."[1]  Trustee's Waiver of Attorney-Client Privilege Belonging to Bankruptcy Debtor Great Northern Paper, Inc., Attached as Exhibit 1 to Plaintiffs' Motion to

---

[1] The *Coffin* case referred to by the bankruptcy trustee is the instant case.

Compel.[2]  In its Opposition, Bowater asserts three grounds for its claim of privilege: (1) the bankruptcy trustee does not have the authority to waive GNP's privilege because that privilege is held by the Brascan Corp. as a result of a court-approved Asset Purchase Agreement (hereinafter "APA") executed on March 31, 2003; (2) a jointly held privilege cannot be waived unilaterally; and (3) GNP's waiver does not require production of documents currently in Bowater's sole possession.  For the reasons set forth below, the Court will deny Plaintiffs' Motion.

## I.  Control of the Privilege

The first dispute centers on whether GNP's trustee in bankruptcy may waive the attorney-client privilege with respect to communications between Bowater attorneys and GNP representatives.  Bowater contends that the APA "transferred all of GNP's assets to Brascan, including control of GNP's attorney-client privilege."  Bowater's Opposition to Plaintiffs' Motion to Compel at 3-4.  In contrast, Plaintiffs contend that "a bare transfer of assets – unaccompanied by a transfer of stock or a complete merger of the sold corporation into the purchaser – does not transfer 'client' status to the asset purchaser, and thus does not transfer the right to assert or waive the corporation's pre-sale attorney-client privilege."  Plaintiffs' Motion to Compel at 5.  In support of this proposition, Plaintiffs cite several cases.  *See, e.g.*, *Telectronics Proprietary, Ltd. v. Medtronic, Inc.*, 836 F.2d 1332, 1336 (Fed. Cir. 1988); *Yosemite Investment, Inc. v. Floyd Bell, Inc.*, 943 F. Supp. 882, 883-84 (S.D. Ohio 1996); *In re In-Store Advertising Sec. Litig.*, 163 F.R.D. 452, 458 (S.D.N.Y. 1995); *In re Grand Jury Subpoenas 89-3 & 89-4*, 734 F. Supp. 1207, 1211 n.3 (E.D. Va. 1990), *aff'd in part*, 902 F.2d 244 (4th Cir. 1990); *Sobol v. E.P. Dutton, Inc.*, 112 F.R.D. 99, 103 (S.D.N.Y. 1986).

---

[2] It is undisputed in the posture of the Motion as set by the argumentation of the parties that the critical fact in resolving the Motion is whether the trustee's waiver of the privilege was valid.  The resolution of that issue turns on resolution of the question of whether he had title to the privilege at the time of his waiver of it.

Bowater directs the Court to a recent decision acknowledging the bright-line rule that a mere transfer of assets does not transfer the attorney-client privilege, but holding that "this bright-line rule does not apply equally to the myriad ways control of a corporation or a portion of [a] corporation can change hands." *Soverain Software LLC v. Gap, Inc.*, 340 F. Supp. 2d 760, 763 (E.D. Tex. 2004). The *Soverain* court further states that "[t]he Court finds the more appropriate rule to be 'whether the attorney-client relationship transfers . . . to the new owners turns on the practical consequences rather than the formalities of the particular transaction.'" *Id.* (quoting *Tekni-Plex, Inc. v. Meyer & Landis*, 89 N.Y.2d 123, 674 N.E.2d 663, 668, 651 N.Y.S.2d 954 (N.Y. 1996)). Moreover, "[i]f the practical consequences of the transaction result in the transfer of control of the business and the continuation of the business under new management, the authority to assert or waive the attorney-client privilege will follow as well." *Id.* (citing *Community Futures Trading Comm'n. v. Weintraub*, 471 U.S. 343, 349, 85 L. Ed. 2d 372, 105 S. Ct. 1986 (1985) ("when control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well.").

The Court, like the *Soverain* court, is not persuaded that the sale at issue was merely a transfer of assets. The APA defined "assets" as "all of Seller's right, title and interest in all properties, assets, and rights of any kind, whether tangible or intangible, real or personal, owned, licensed, leased, by Seller in connection with or incidental to the operation of the Business or otherwise ...." APA § 1.1(b) (emphasis added). Furthermore, the APA definition of "rights" is as follows:

> all patents, trademarks, trade secrets, proprietary process or rights, copyrights, trade names, service marks, internet domain names[,] any applications or agreements for or relating to any of the foregoing including, without limitation, the name "Great Northern Paper", lists of suppliers, customer referral lists, goodwill (including the exclusive right to represent itself as carrying on the Business in succession to Seller), marketing literature, electronic systems and

> databases, choses in action, common law or implied rights to use intellectual property, claims, and rights to recovery or offset of any kind or character arising from or concerning the Seller and/or the Business, including, without limitation, <u>confidentiality obligations and similar obligations</u>, and all other intangible property rights of Seller utilized in connection with, or related to, the operation of the Business.

*Id.* § 1.2(aa) (emphasis added).  Contrary to Plaintiffs' position, the Court finds that the APA constitutes much more than a simple transfer of physical assets.  As a result of the APA, Brascan assumed, *inter alia*, all of GNP's tangible and intangible rights, the name "Great Northern Paper", the right to represent itself as GNP's successor, and all confidentiality obligations.  The practical consequence of the APA was to transfer virtually all control and continuation of the GNP business to Brascan.  As a result, the Court concludes that the right to waive the attorney-client privilege with respect to communications between Bowater legal representatives and GNP rests with the managers of Brascan and not with GNP's bankruptcy trustee.  *Cf. Weintraub*, 471 U.S. at 349.

Because the Court rules that the GNP bankruptcy trustee has no right to waive GNP's attorney-client privilege, the Court does not reach the other grounds upon which Bowater resists the Motion.

## II.  Conclusion

For the reasons set forth above, it is **ORDERED** that Plaintiffs' Motion to Compel be, and it is hereby, **DENIED**.

/s/Gene Carter_____

**GENE CARTER**
United States Senior District Judge

Dated at Portland, Maine this 13th day of May, 2005.

5