## UNITED STATES DISTRICT COURT

## DISTRICT OF MAINE

|  |  |
|---|---|
| ARTEMIS COFFIN, GEORGE BAKER, DARRELL FLANDERS, JAMES MINGO, TERRENCE LYON, HAROLD SMITH, ROBERT DEWITT, DUANE L. HANSCOM, JOSEPH GAGLIARDI JR., TRINA VAZNIS, RAYMOND MACDONALD, ROBERT P. HEALEY, BARRY BRYANT, LEE WHEATON and GALEN M. LANDER, Individually and as Representatives of a class of all persons similarly situated, Plaintiffs v. BOWATER INCORPORATED, GROUP PROTECTION FOR EMPLOYEES OF BOWATER INCORPORATED – GREAT NORTHERN PAPER, INC. DIVISION, BOWATER INCORPORATED POINT OF SERVICE MEDICAL BENEFITS PLAN, BOWATER INCORPORATED POINT OF SERVICE MEDICAL PLAN, BOWATER INCORPORATED BENEFIT PLAN and BOWATER LIFE INSURANCE PLAN, Defendants | Civil No. 03-227-B-C |

Gene Carter, Senior District Judge

### MEMORANDUM OF DECISION AND ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

This action was commenced by fifteen former employees of three Maine paper and lumber plants, all owned at one time by Defendant Bowater, Inc.  Plaintiffs assert

1

claims on behalf of themselves, their beneficiaries, and a putative class of persons similarly situated seeking redress for their loss of health and welfare benefits.  Plaintiffs' claims are brought under sections 502(a)(1)(B), 502(a)(2), and 502(a)(3) of the Employee Retirement Income and Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* (Count I), section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 141, *et seq.* (Counts II and III), and for breach of fiduciary duty under ERISA (Count IV).

Now before the Court is Plaintiffs' Motion for Class Certification (Docket Item No. 63).  Attached as Appendix A to Plaintiffs' Motion is a proposed definition of a class and four subclasses.  Defendants oppose the Motion.  *See* Bowater's Opposition to Plaintiffs' Motion for Class Certification (Docket Item No. 70).  The Court held oral argument on April 26, 2005, and invited supplemental briefing from the parties related to the potential class certification of the Count I ERISA claims only.  Plaintiffs filed their Supplemental Memorandum Regarding Plaintiffs' Motion for Class Certification (Docket Item No. 102) on May 26, 2005.  Defendants responded on June 13, 2005 (Docket Item No. 111).  For the reasons set forth below, the Court will grant Plaintiffs' Motion as to Counts I, II, and III, and deny Plaintiffs' Motion as to Count IV.

## I. Factual Allegations

Plaintiffs' Third Amended Complaint (Docket Item No. 82) sets forth the following allegations.  In late 1991, Georgia-Pacific Corporation (hereinafter "Georgia-Pacific") and its subsidiary, Great Northern Nekoosa, Inc. (hereinafter "GNN") transferred three lumber and paper plants -- located in the Maine towns of Millinocket, East Millinocket and Nashville Plantation[1] -- to a newly formed corporation known as Great Northern Paper (hereinafter "GNP").  Third Amended Complaint ¶ 33.  This newly

---

[1] The Nashville Plantation plant is commonly referred to as the "Pinkham Lumber" plant.

formed entity was subsequently purchased from Georgia-Pacific/GNN by Bowater, Inc. *Id.* Under collective bargaining agreements between Georgia-Pacific/GNN and employee unions in place at the time of the sale of GNP to Bowater, bargaining unit employees who retired on pension under Georgia-Pacific ownership were entitled to company paid, lifetime retiree health and welfare benefits. *Id.* ¶ 32. Salaried employees who were not members of any bargaining unit were entitled to the same benefits. *Id.*

  As part of the purchase agreement between Bowater and Georgia-Pacific/GNN, Bowater generally assumed Georgia-Pacific/GNN's obligations under the collective bargaining agreements, but it did not assume the obligation to provide any health or welfare benefits to retirees who elected to retire prior to the date of sale. *Id.* ¶ 39.[2] Plaintiffs allege that Bowater did, however, assume the obligation to provide retiree health and welfare benefits to post-sale retirees. *Id.* In 1995 and 1996, Bowater negotiated new agreements with the various unions. *Id.* ¶ 40. These agreements were in effect in 1999. *Id.* At the beginning of 1999, Bowater was the sponsor and/or the funding source of the employee welfare benefit plans that administered retiree health and welfare benefits. *Id.* ¶ 41. Plaintiffs assert that Bowater "guaranteed that an hourly or salaried employee who retired from Bowater (GNP) and who was eligible to receive a pension at the time of retirement, was entitled, along with his/her eligible dependents, to receive Company Paid, Lifetime Retiree Health and Welfare Benefits -- medical coverage and other 'welfare' insurance benefits within the meaning of ERISA, with no premiums to be paid by the bargaining unit employee … for the employee's lifetime." *Id.* ¶ 44. Plaintiffs also allege that surviving spouses or dependents of a deceased or salaried

---

[2] Bowater's assumption of Georgia-Pacific/GNN's obligations to employees and retirees when it purchased the GNP plants is not material to the instant lawsuit. At issue here is whether Bowater retained liability when it sold the GNP plants.

employee were also entitled to receive benefits on the same terms.  *Id.*  Finally, Plaintiffs contend that active and retired employees from Bowater (GNP) were covered by the Bowater Life Insurance Plan, which provided that non-disabled bargaining unit employees were guaranteed a life insurance policy for a stated value.  *Id.* ¶ 45.

In early 1999, Bowater sold Pinkham Lumber to J.D. Irving Ltd. (hereinafter "Irving"), a large privately-held company.  As part of its agreement with Irving, Bowater agreed to retain retiree health insurance and other retiree welfare benefit liabilities with respect to Pinkham employees who retired prior to the sale or during a window period after the sale.  *Id.* ¶ 47.  In May 1999, Bowater entered into an agreement with Inexcon Maine, Inc. (hereinafter "Inexcon") for the sale of GNP, which included the Millinocket and East Millinocket plants.  *Id.* ¶ 48.  Plaintiffs allege that Bowater retained liability for all retiree pension benefits earned by GNP employees through the effective date of the GNP sale and retained liability in excess of approximately $102 million for all other retiree benefits, including health and welfare benefits earned by GNP employees.  *Id.* ¶ 49.  Inexcon allegedly assumed the first $102 million of benefit liability.  *Id.*

Plaintiffs contend that Bowater did not obtain the consent of the affected retirees to transfer the financial responsibility for payment of any benefit liabilities to Inexcon, nor did Bowater secure a release of its own liability.  *Id.* ¶ 50.  Instead, Plaintiffs allege that during the period from July to October 1999, Bowater made representations to the retirees and to the Millinocket and East Millinocket employees that those employees who had retired before the Bowater-Inexcon sale were entitled to lifetime retiree health and welfare benefits to be funded by "the Company."  *Id.* ¶ 51.  Furthermore, Bowater allegedly made promises that employees who retired after the sale with an effective date

of retirement on or before October 1, 1999, would be entitled to the same benefits on the same terms as those employees who had already retired. *Id.* Plaintiffs claim that Bowater entered into agreements with various unions to this effect. *Id.* Plaintiffs allege that Bowater also promised the salaried employees that they would be entitled to company paid lifetime retiree health and welfare benefits if they retired before October 1, 1999, and were pension eligible. *Id.* ¶52.

Pursuant to the terms of the Bowater-Inexcon sale agreement, Inexcon, and/or Plans maintained by Inexcon, began paying the obligations of the Bowater Medical Plan and Bowater Life Insurance Plan after the sale and continued to do so until approximately September 2002. *Id.* ¶ 53. Inexcon presumably stopped making payments due to GNP's financial difficulties.[3] Once Inexcon stopped paying the obligations, it is alleged that Bowater did not furnish any supplemental funding. *Id.* ¶ 54.

Plaintiffs' Third Amended Complaint suggests that in April 2003, named Plaintiff Galen M. Lander mailed a claim to Bowater seeking medical coverage. *Id.* ¶ 55. This claim was denied and the subsequent appeal was also denied. *Id.* Plaintiffs allege that all named Plaintiffs in this action also submitted claims and pursued subsequent appeals to Bowater that were similarly denied. *Id.* Therefore, the named Plaintiffs have exhausted all administrative remedies.

## II. Proposed Class

In their Motion for Class Certification (Docket Item No. 63), Plaintiffs propose that the Court certify the following general class and subclasses:

**General Class**: Individuals who were receiving company-paid health coverage from Great Northern Paper, Inc. prior to its 2003 bankruptcy,

---

[3] GNP filed for bankruptcy in the United States Bankruptcy Court for the District of Maine on January 9, 2003. *See In re* Great Northern Paper, Inc., No. 03-10048-LHK (Bankr. D. Me.)

because (i) they had retired on pension when GNP was under the ownership of Bowater between January 1, 1992, and August 17, 1999, or in a short window period after the sale of GNP, extending to October 1, 1999; (ii) they were eligible spouses or dependents of such retirees; or (iii) their former spouse had died as an employee at GNP when it was under Bowater ownership -- and any individuals who became eligible spouses or dependents of such retirees after the bankruptcy.

**Subclass A**: Those individuals who are members of the general class by reason of a retirement or a death of a union-represented employee that occurred before August 17, 1999.

**Subclass B**: Those individuals who are members of the general class by reason of a retirement or a death of a union-represented employee that occurred after August 17, 1999.

**Subclass C**: Those individuals who are members of the general class by reason of the retirement of a non-union-represented employee that took effect before September 1, 1999.

**Subclass D**: Those individuals who are members of the general class by reason of the retirement of a non-union-represented employee that took effect on or after September 1, 1999.

Appendix A to Plaintiffs' Motion for Class Certification (Docket Item No. 63) at 1.

Count I of Plaintiffs' Third Amended Complaint is brought pursuant to ERISA on behalf of the general class, and thus includes all members of each subclass.  Count II of Plaintiffs' Third Amended Complaint is brought pursuant to LMRA § 301 on behalf of members of proposed Subclass A.  Count III of Plaintiffs' Third Amended Complaint is brought pursuant to LMRA § 301 on behalf of members of proposed Subclass B.  Count IV of Plaintiffs' Third Amended Complaint, alleging breach of fiduciary duties in violation of ERISA, is asserted on behalf of members of proposed Subclasses B and D. Members of Subclass C are not parties to either the LMRA counts or the breach of fiduciary duty count.

At oral argument, the Court requested that Plaintiffs submit a supplemental brief proposing a class based solely on the ERISA claim contained in Count I of the Third Amended Complaint.[4]  The proposed class submitted by Plaintiffs in response to the Court's request tracks verbatim the general class description submitted with Plaintiffs' Motion for Class Certification and now also includes a deadline for potential class members to exhaust their administrative remedies.  The class proposed by Plaintiffs in response to the Court's request for supplemental briefing is as follows:

All persons who:

> (1) were receiving company-paid health coverage from Great Northern Paper, Inc. prior to its 2003 bankruptcy, because (i) they had retired on pension when GNP was under the ownership of Bowater between January 1, 1992, and August 17, 1999, or in a short window period after the sale of GNP, extending to October 1, 1999; (ii) they were eligible spouses or dependents of such retirees; or (iii) their former spouse had died as an employee at GNP when it was under Bowater ownership -- and any individuals who became eligible spouses or dependents of such retirees after the bankruptcy, and

> (2) prior to December 5, 2005, submitted a claim for benefits to Bowater and either received from Bowater a letter denying his/her appeal of an adverse benefit determination or had an appeal pending before Bowater for more than [60] days [or such shorter period as the Court finds "reasonable" under 29 C.F.R. 2560.503-1(i)(2)(iii)(A)].

*See* Exhibit A to Plaintiffs' Supplemental Memorandum Regarding Plaintiffs' Motion for Class Certification at 1.

### III. Applicable Law

Class action certification is governed by Rule 23 of the Federal Rules of Civil Procedure.  Courts have considerable discretion in determining whether to certify a class. *Dionne v. Bouley*, 757 F.2d 1344, 1355 (1st Cir. 1985).  To determine whether

---

[4] The Court did not request any additional briefing with respect to the LMRA claims or the ERISA fiduciary duty claim.

certification is appropriate, the court must subject Plaintiffs' Motion for Class Certification to a "rigorous analysis." *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 161, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982). The party seeking class certification bears the burden of establishing that class certification is appropriate. *Id.* at 157-58; *Rand v. Bath Iron Works, Corp.*, No. 99-227-P-C, 2000 WL 761630 (D. Me. Apr. 19, 2000). The initial inquiry required by Rules 23(a) and (b) does not involve an examination of the merits of the underlying case, but instead serves the limited purpose of determining whether a class action is the most appropriate method of adjudicating Plaintiffs' claims. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974); *Tardiff v. Knox County*, 218 F.R.D. 332 (D. Me. 2003), *aff'd* 365 F.3d 1 (1st Cir. 2004).

Plaintiffs must first satisfy the four factors for class certification set forth in Fed. R. Civ. P. 23(a):

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). If Plaintiffs meet all of the Rule 23(a) factors, they must also meet one of the requirements of Fed. R. Civ. P. 23(b). *See Smilow v. Southwestern Bell Mobile Sys., Inc.*, 323 F.3d 32, 38 (1st Cir. 2003). Plaintiffs here rely on Rule 23(b)(3), which states that a Court may certify a class if it finds the following:

> the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent

and nature of any litigation concerning the controversy already
commenced by or against members of the class; (C) the desirability or
undesirability of concentrating the litigation of the claims in the particular
forum; (D) the difficulties likely to be encountered in the management of a
class action.

Fed. R. Civ. P. 23(b)(3).[5]  Plaintiffs must satisfy the requirements of Rule 23 for each

claim they seek to have certified.

### IV. Plaintiffs' ERISA Section 502 Claims

### A. Rule 23(a)

### 1. Numerosity

In general, a class of more than forty individuals satisfies the presumption that

joinder is impractical and class treatment is appropriate.  *See Carrier v. JPB Enters., Inc.*,

206 F.R.D. 332 (D. Me. 2002).  Numerosity requirements must be met not only for the

general class, but also for each subclass.  Plaintiffs assert that numerosity is satisfied in

this case because the general ERISA claim alleged in Count I is brought on behalf of 652

putative class members.  In their initial Motion for Class Certification, Plaintiffs

estimated that subclass A contains 462 putative class members, subclass B contains 63

putative class members, subclass C contains 87 putative class members, and subclass D

contains 40 putative class members.  Thus, Plaintiffs conclude, the general class and all

subclasses are sufficiently large to satisfy the numerosity requirement.

In response, however, Defendants challenge Plaintiffs' numerosity argument.

Defendants allege that because the named Plaintiffs are virtually alone in exhausting their

administrative remedies before filing an ERISA based lawsuit, the class is not sufficiently

---

[5] In the alternative, Plaintiffs rely on Rule 23(c)(4).  "When appropriate (A) an action may be
brought or maintained as a class action with respect to particular issues, or (B) a class may be divided into
subclasses and each subclass treated as a class, and the provisions of this rule shall then be construed and
applied accordingly."  Fed. R. Civ. P. 23(c)(4).

numerous to justify class treatment.  *See* Defendants' Opposition at 6.[6]  Defendants

further state that even though additional putative class members have initiated claims

subsequent to the filing of this lawsuit, it is not known whether these individuals will see

the administrative process through to exhaustion, nor is the particular subclass to which

each individual will belong readily ascertainable.  *Id.*  Therefore, Defendants conclude,

the numerosity requirement of Rule 23(a) is not met in this case.

Following oral argument, the Court requested that Plaintiffs provide updated

information regarding the progress of the administrative process.  Plaintiffs state that as

of May 26, 2005, 426 putative class members had filed claims with Bowater.  Of these

426 individuals, 337 had received a claim denial letter from Bowater.  Two hundred

thirty-seven putative class members filed appeals in response to Bowater's denial letter,

and 200 putative class members received final denial letters.  *See* Declaration of Meredith

Brinson (attached as Exhibit C to Plaintiffs' Supplemental Memorandum Regarding

Plaintiffs' Motion for Class Certification) ¶ 4.  Plaintiffs further allege that approximately

seventy-two putative class members have had their appeals pending longer than sixty

---

[6] The Court has previously stated in this case that

the claims of the 638 non-party individuals dismissed from this action by the Court's
Order Granting Defendants' Motion to Dismiss and those of all other persons similarly
situated will not be entertained in this case, if at all, unless and until the persons holding
those claims have exhausted, *inter alia*, any contractually-based administrative remedies
attached to these claims, and the Court will not take any action to effect the exhaustion
process or status of the claims of these individuals.  The Court intends that to be the "law
of the case."

*See* Order Denying the Plaintiffs' Motion Pursuant to Fed. R. Civ. P. 23(d) Requesting an Order Regarding
the Conduct of This Action (Docket Item No. 56) at 3-4.

days, thereby resulting in a deemed denial of the appeal under the applicable federal regulations.[7]  *Id.*

Bowater disputes that any Plaintiff has exhausted administrative remedies through a deemed denial.  Specifically, Bowater states that it has sent out "hundreds of letters … request[ing] additional information" from claimants and that those letters have the effect of tolling the time for Bowater to respond to claims and appeals.  Defendants' Response to Plaintiffs' Supplemental Memorandum Regarding Plaintiffs' Motion for Class Certification (Docket Item No. 111) at 5 n.11.  The Court need not resolve at this juncture whether these seventy-two individuals have exhausted their administrative remedies because the Court concludes that the putative class as it currently stands, even without these individuals, is sufficiently numerous.[8]

---

[7] 29 C.F.R. 2560.503-1(i)(2)(iii)(A) provides: "In the case of a group health plan that provides for one appeal of an adverse benefit determination, such notification shall be provided not later than 60 days after receipt by the plan of the claimant's request for review of an adverse benefit determination." Accordingly, failure to provide a final denial of a claimant's appeal within sixty days results in the appeal being deemed denied.

[8] The Court notes, however, that Bowater's requests for additional information -- communicated through form letters to claimants -- ask for production of information that in the Court's understanding should already be in Bowater's possession.  Specifically, Bowater has requested that claimants "include all documents that you believe form the basis for your claim for benefits, including all summary plan descriptions, and any other plan documents, whether formal or informal, and all relevant collective bargaining agreements."  *See, e.g.*, Letter from Aaron B. Whitlock, Director of Compensation and Benefits, Bowater, Inc., to Michael D. Smart (July 27, 2004) (attached as Exhibit 1 to Affidavit of Robert McDowell (Docket Item No. 113)); Letter from Aaron B. Whitlock, Director of Compensation and Benefits, Bowater, Inc., to Richard A. Savage (Aug. 2, 2004) (attached as Exhibit 1 to Affidavit of Robert McDowell); Letter from Aaron B. Whitlock, Director of Compensation and Benefits, Bowater, Inc., to Duane Sennett (Sept. 28, 2004) (attached as Exhibit 1 to Affidavit of Robert McDowell); Letter from Aaron B. Whitlock, Director of Compensation and Benefits, Bowater, Inc., to Eugene Scott (Nov. 30, 2004) (attached as Exhibit 1 to Affidavit of Robert McDowell); Letter from Aaron B. Whitlock, Director of Compensation and Benefits, Bowater, Inc., to James Federico (Jan. 12, 2005) (attached as Exhibit 1 to Affidavit of Robert McDowell); Letter from Aaron B. Whitlock, Director of Compensation and Benefits, Bowater, Inc., to Douglas E. Weed (Jan. 27, 2005) (attached as Exhibit 1 to Affidavit of Robert McDowell); Letter from Aaron B. Whitlock, Director of Compensation and Benefits, Bowater, Inc., to Malcolm A. MacKenzie (Feb. 2, 2005) (attached as Exhibit 1 to Affidavit of Robert McDowell); Letter from Aaron B. Whitlock, Director of Compensation and Benefits, Bowater, Inc., to Ellen J. Dickinson (Apr. 20, 2005) (attached as Exhibit 1 to Affidavit of Robert McDowell).

## 2. Commonality and Typicality

The second and third prongs of Rule 23 require that Plaintiffs establish that "there are questions of law or fact common to the class" and that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a).  This Court has previously stated that "[t]he commonality and typicality prerequisites mandate only that complainants' claims be common, and not in conflict, but not necessarily identical."  *Rancourt v. Concannon*, 207 F.R.D. 14, 16 (D. Me. 2002); *see also Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 155, 102 S. Ct. 2364, 72 L.

---

The Court is neither naïve nor strategically blind.  It clearly perceives the obvious fact that Bowater is insisting on satisfaction of the requirement that each class member exhaust administrative remedies to qualify for class membership and then acting without any other purpose than delay and obstruction to deny such qualification by a uniform and consistent program of frustrating the efforts of putative class members to qualify by these unnecessary document production demands and by delaying denial action on these claims for the maximum possible period of time.  This course of conduct is unfair to putative class members, named Plaintiffs, and to the Court.  Worse still, the strategy operates to frustrate the achievement of the laudatory goals intended to be realized in the judicial process by the implementation, on a proper basis, of the mechanisms of Rule 23 of the Federal Rules of Civil Procedure.  This Court feels the need to respond appropriately to the excesses of this strategy in this case and will continue to do so if Bowater persists in the strategy.  The Court will not reward, where it can avoid doing so, needless delay and obfuscation of the exhaustion process.

It is perfectly clear to the Court that there are no genuinely reflective decisional choices made, or intended to be made, by Bowater in denying any of these claims.  It is clear that Bowater has routinely denied those claims previously made and that it intends to routinely deny any further claims as they mature and to delay the maturation of their denial to the maximum extent possible in an effort to defeat the claimant's qualification for class membership here.  The Court is of the view that there is no reason that serves Bowater's legitimate interests why the claims cannot be promptly denied, as Bowater obviously ultimately intends to do, so that the resolution of all of these claims can be facilitated in one procedural setting.  Bowater's strategy smacks of mindless obstructionism in view of the likelihood it will be required to face in subsequent class actions, or piecemeal litigation by those claimants who do not exhaust administrative remedies in time to qualify as class members herein, the preclusive rigors of offensive collateral estoppel in the ultimate resolution of those claims.  Bowater is unlikely to realize either efficiency or economy in its own interests by such a course and will only succeed in clogging the dockets of this or other courts in its pursuit.  It should maturely and responsibly decide to take its procedural medicine, as it ultimately must, in one dose, rather than in a long-delayed series of sips.

The Court believes that it may properly expect in these circumstances that all parties proceed through the administrative process in good faith and in an efficient and expeditious manner.  Furthermore, the Court suggests that counsel meet promptly and discuss obviating the need to endure this mindless fol-de-rol by stipulating that any claimant who has, as of some current date, filed a claim be deemed to have had that claim denied for purposes of class membership herein.

Ed 2d 740 (1982) ("Class relief is peculiarly appropriate when the issues involved are common to the class as a whole and when they turn on questions of law applicable in the same manner to each member of the class.  For in such cases, the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion under Rule 23.") (internal citations and punctuation omitted).

Defendants' only challenge to commonality and typicality is that the named Plaintiffs are not typical because they, unlike other members of the putative class, have exhausted their administrative remedies.  The Court finds little merit to this argument.  As noted *supra*, no fewer than 200 potential plaintiffs have exhausted their administrative remedies.  Furthermore, the Court has required any person wishing to participate in this lawsuit to exhaust all available administrative remedies.  *See* Order Denying the Plaintiffs' Motion Pursuant to Fed. R. Civ. P. 23(d) Requesting an Order Regarding the Conduct of this Action (Docket Item No. 56) at 3-4.  All potential class members must and will share this characteristic with the named Plaintiffs.

The Court therefore concludes that the Count I ERISA claim brought by the representative class members meets the typicality and commonality requirements of Rule 23(a).  The resolution of the Count I ERISA claim turns on legal and factual issues common to all class members.

### 3.  Interests of Class Adequately Represented

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  To determine whether the named Plaintiffs adequately represent the interests of the class, the Court

considers two factors: "(1) whether the class representative has any conflicts of interest with respect to the common issues raised on behalf of the class and (2) whether the plaintiff's counsel will vigorously prosecute the litigation on behalf of the class." *Curtis v. Comm'r, Me. Dep't of Human Servs.*, 159 F.R.D. 339, 341 (D. Me. 1994).

The Court first addresses the conflicts of interest element. Plaintiffs contend that there are no conflicts of interest between any class members in either the general class or in the proposed subclasses. Furthermore, Plaintiffs state that the interests of the named Plaintiffs are "perfectly aligned with the interests of the unnamed class members." Plaintiffs' Motion for Class Certification at 16. In opposition, Bowater makes three arguments, none of which is persuasive. Bowater first alleges that because no named Plaintiff is either a spouse or dependent of any GNP retiree, the named Plaintiffs are *per se* inadequate representatives of those class members. *See* Bowater's Opposition to Plaintiffs' Motion for Class Certification at 7. This argument fails because the claims held by spouses and dependents are entirely derivative of the retirees' claims. In other words, the spouses and dependants cannot prevail unless the retirees prevail. In such a circumstance, there is no conflict between the interests of the named Plaintiffs and the interests of any spouses or dependents. The absence of any spouse or dependent as a named Plaintiff does not create a conflict that precludes class certification.

Bowater's second argument against adequacy of representation turns on the fact that the PACE International Union is advancing Plaintiffs' counsel fees. Bowater baldy asserts that there existed a rivalry between unions at GNP and that the PACE union cannot be expected to guard the interests of the salaried retirees. *See id.* at 9. In support of this proposition, Bowater cites two district court cases in which a court denied class

certification where documented rivalries between unions precluded one union from adequately representing the interests of the other. *See Martinez v. Barasch*, No. 01 Civ. 2289(MBM), 2004 WL 1367445 (S.D.N.Y. June 16, 2004); *Kamean v. Local 363 Int'l Brotherhood of Teamsters, etc.*, 109 F.R.D. 391 (S.D.N.Y. 1986). Bowater's unsupported claim of rivalry between GNP unions does not warrant adoption of the rationale employed in *Martinez* and *Kamean*, both of which involved well documented tensions between named plaintiffs and putative class members. "To defeat the adequacy requirement of Rule 23, a conflict must be more than merely speculative or hypothetical." *Gunnells v. Healthplan Servs.*, 348 F.3d 417, 430 (4th Cir. 2003) (internal citation omitted). There is no colorable showing here that the PACE union will exercise inappropriate control over this litigation to the detriment of other class members. In the absence of any evidence that union hostility would detrimentally affect the ability of the named Plaintiffs to pursue this action on behalf of all class members, the Court concludes that there are no conflicts of interest that prevent the named Plaintiffs from representing the class.[9]

The Court must next consider whether Plaintiffs' counsel will vigorously prosecute this action on behalf of the entire class. Plaintiffs are represented by Bredhoff & Kaiser, P.L.L.C., located in Washington, D.C. Attorneys from Bredhoff & Kaiser have demonstrated to the Court's satisfaction that they possess the necessary experience in

---

[9] Plaintiffs direct the Court to cases in which courts have found union financing of attorney fees permissible in class actions. *See, e.g.*, *Clark Equip. Co. v. Int'l Union, Allied Indus. Workers of Am.*, 803 F.2d 878, 880 (6th Cir. 1986) ("Unions have standing to represent a class, even if the union itself alleges no specific injury. The fact that the union represented non-union employees … does not mandate a different result. This group could have brought an independent action, but instead let union counsel represent them.") (internal citation omitted); *McClendon v. Continental Group, Inc.*, 113 F.R.D. 39, 43 (D.N.J. 1986) (United Steelworkers' funding of the litigation "does not make the named plaintiffs antagonistic to the interests of the class."). The Court finds the rationales employed in these cases persuasive.

class action litigation under ERISA to effectively prosecute this action.  *See* Declaration of Douglas L. Greenfield in Support of Motion for Class Certification (attached as Exhibit 3 to Plaintiffs' Motion for Class Certification) at 2-5.  Furthermore, the Court is satisfied that Plaintiffs' local counsel possesses the requisite qualifications to effectively represent the class.  Accordingly, Plaintiffs have satisfied the two elements of Rule 23(a)(4).

## B. Rule 23(b)(3)

Plaintiffs having satisfied the four requirements of Rule 23(a), the Court now turns to Rule 23(b)(3).[10]  The standard set forth in Rule 23(b) is not overly burdensome on plaintiffs seeking class certification.  *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997) ("Framed for situations in which class-action treatment is not as clearly called for as it is in Rule 23(b)(1) and (b)(2) situations, Rule 23(b)(3) permits certification where class suit may nevertheless be convenient and desirable.") (internal quotations omitted); *Smilow*, 323 F.3d at 39 ("Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class.").

Liability under Count I of Plaintiffs' Third Amended Complaint turns on resolution of one predominant issue: whether GNP retirees who lost their company-paid health and welfare benefits following GNP's bankruptcy remained eligible to receive these benefits from Bowater.  Though Bowater contends that this claim will involve

---

[10] The Court notes that Plaintiffs' Motion for Class Certification indicates that they are pursuing class status under Fed. R. Civ. P. 23(b)(3).  *See* Plaintiffs' Motion for Class Certification at 1, 16-19.  At oral argument, however, Plaintiffs' counsel indicated that "this case is well suited to class action treatment under Rule 23(b)(2) ...."  Transcript of Oral Argument (Docket Item No. 104), at 3.  Upon reviewing Plaintiffs' arguments in the context of Rule 23, it is apparent that Plaintiffs are relying on Rule 23(b)(3) and that the reference to Rule 23(b)(2) was simply a misstatement by counsel.

resolution of numerous individual issues, the Court is not so persuaded.  Bowater's Rule

23(b)(3) opposition hinges on three alleged individual issues: (1) some Plaintiffs signed

releases barring any ERISA lawsuits; (2) some Plaintiffs submitted claims that are

covered by worker's compensation and not covered by an ERISA plan; and (3) some

Plaintiffs did not provide adequate documentation with their claim requests.  Each of

these issues, though pertaining to individual class members and not the general class, do

not predominate over the common issues.  In the event that Plaintiffs establish Bowater's

liability for their health benefits, Bowater will have a full and fair opportunity to raise any

affirmative defenses, such as those listed above, at the time damages are calculated.

*Accord Smilow*, 323 F.3d at 39-40 ("If, moreover, evidence later shows that an

affirmative defense is likely to bar claims against at least some class members, then a

court has available adequate procedural mechanisms.  For example, it can place class

members with potentially barred claims in a separate subclass or exclude them from the

class altogether.") (internal citations omitted).

Rule 23(b)(3) identifies four additional factors for the Court's consideration when

weighing whether class action is the superior method for adjudication of Plaintiffs'

claims.  As set out in the Rule, the matters pertinent to resolving the issue are:

> (A) the interest of members of the class in individually controlling the
> prosecution or defense of separate actions; (B) the extent and nature of any
> litigation concerning the controversy already commenced by or against
> members of the class; (C) the desirability or undesirability of
> concentrating the litigation of the claims in the particular forum; (D) the
> difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3).  Neither Plaintiffs nor Defendants presented the Court with any

specific argumentation addressing these four factors in briefing or at oral argument.

However, upon careful consideration of the entire record, the Court concludes that none

of the Rule 23(b)(3) factors weighs against certification of Count I.  First, there is no suggestion made that named Plaintiffs or putative class members have an interest in individually prosecuting separate actions.  Second, the Court is unaware of any litigation involving the same factual circumstances pending in any other Court.  Third, the Court concludes that the District of Maine is an appropriate forum for the present action as the overwhelming majority of the Plaintiffs are Maine citizens who were working in Maine at the time of the events giving rise to this action.  Fourth, the Court is satisfied that management of this class action will not present any difficulties weighing against certification.  Accordingly, the Court concludes that Plaintiffs have established that class certification on the basis of the amended class description is appropriate with respect to Count I.

### V.  Plaintiffs' LMRA Claims

Having concluded that Count I of Plaintiffs' Third Amended Complaint is appropriate for class certification, the Court now turns to Plaintiffs' claims brought pursuant to the Labor Management Relations Act.  Counts II and III of Plaintiffs' Third Amended Complaint sets forth claims against Defendant Bowater under section 301 of LMRA.  Specifically, Plaintiffs allege that pursuant to various collective bargaining agreements executed between employee unions and Bowater or Bowater (GNP), members of proposed subclasses A and B are entitled to lifetime retiree health insurance and other retiree benefits with no premium payments required of the employee or the employee's eligible dependents, which Bowater has failed to provide.  *See* Third Amended Complaint ¶¶ 69, 70, 72, 73.[11]

---

[11] The claims alleged in Count II and Count III are identical, with the only difference being that Count II presents claims for members of proposed subclass A -- union-represented employees who retired

### A.  Rule 23(a)

Determining whether class certification is appropriate again depends on the Plaintiffs' ability to meet the requirements of Rules 23(a) and 23(b).  The Court will consider each in turn.

#### 1.  Numerosity

Plaintiffs' LMRA claims only apply to union-represented individuals.  In their initial Motion for Class Certification, Plaintiffs indicated that proposed Subclass A consisted of 462 retirees and proposed Subclass B consisted of 63 retirees.  Although the Court does not have updated figures indicating the exact number of individuals in each subclass who have exhausted administrative remedies, the Court is satisfied that proposed Subclasses A and B are sufficiently numerous to meet the requirements of Rule 23.

#### 2.  Commonality and Typicality

The parties vigorously contest whether the named Plaintiffs' LMRA claims are common to, and typical of, those claims available to putative class members.  Plaintiffs contend that one document (hereinafter the "Bedard document") amended all collective bargaining agreements at issue in this case, the result of which is the existence of common and typical claims across the class.  Specifically, Plaintiffs state the following:

> We will show (i) that in 1999, when the issue of the duration of retiree health benefits was brought to a head (due in part to Bowater's insistence that all prior understandings not clearly expressed in the four corners of the contracts be reduced to writing), union representatives stated their position that the understanding and practice "always" had been that retiree health benefits were "lifetime" benefits, and that they wanted this understanding committed to writing; and (ii) Bowater acceded to this request by signing collective bargaining agreements that included a management-drafted document stating that those who retired before October 1, 1999[,] would be eligible along with "current Bowater retirees"

---

or died before August 17, 1999 --  and Count III presents claims for members of proposed subclass B -- union-represented employees who retired or died after August 17, 1999.

> to "preserve their lifetime company-paid retiree health care."  It is our
> position that this wording, which was incorporated into all the 1999
> agreements, had the retrospective effect the unions had requested and
> reached back to clarify for all of the Bowater-era retirees any uncertainties
> with respect to the duration of retiree health benefits, making the previous
> variations in contract language concerning insurance benefits insignificant.

Plaintiffs' Reply in Support of Plaintiffs' Motion for Class Certification at 10.

Defendants dispute the effect of the Bedard document and contend that Plaintiffs'

LMRA claims are not appropriate for class certification because few issues are common

to the entire class.  Bowater's Opposition at 18.  Specifically, Defendants assert that the

Bedard document has no effect and Plaintiffs' claims are based upon at least fifteen

different collective bargaining agreements, with each agreement containing different

provisions related to health insurance.  *Id.*

The Court recognizes that each proposed subclass will consist of individuals

covered by different collective bargaining agreements; however, the crux of Plaintiffs'

LMRA claims is that the Bedard document amended all of the collective bargaining

agreements at issue in this case and had the effect of guaranteeing lifetime benefits under

each of them to GNP retirees.  This issue is common to all potential Plaintiffs who may

raise a LMRA claim -- regardless of the specific collective bargaining agreement at issue

-- and turns on the effect of the Bedard document.  Accordingly, the Court concludes that

commonality and typicality are satisfied with respect to the essential issue for the LMRA

claims.

### 3.  Interests of Class Adequately Represented

For the reasons stated in section IV(A)(3), *supra*, the Court concludes that the

interests of all class members will be adequately represented.

**B.  Rule 23(b)(3) and Scope of LMRA Class Certification**

Because Plaintiffs' LMRA claims are all dependent on the effect of the Bedard

document, the Court finds that in the present posture of the case, questions of law or fact

common to the class of Plaintiffs holding a LMRA claim predominate over any

individual issues.  This commonality, however, is limited to the effect of the Bedard

document.[12]

Because the Court may certify a class "with respect to particular issues," Fed. R.

Civ. P. 23(c)(4), certification with this limited scope is the proper method to adjudicate

Plaintiffs' LMRA claims.  Class certification "provides a single proceeding in which to

determine the merits of the plaintiffs' claims, and therefore protects the defendant from

inconsistent adjudications."  5 MOORE'S FEDERAL PRACTICE § 23.02 (1999).[13]

---

[12] Should Plaintiffs fail to establish that the Bedard document amended all collective bargaining agreements, the class certification of the LMRA claims may be dissolved by subsequent order of the Court. Fed. R. Civ. P. 23(c)(1).

[13] At oral argument, the Court raised the issue of whether collateral estoppel or res judicata would apply in the event that the LMRA claims were not certified and were adjudicated only with respect to the named Plaintiffs.  The Fourth Circuit Court of Appeals recently addressed this issue, noting that "proceeding with individual claims makes the defendant vulnerable to the asymmetry of collateral estoppel: If … [defendant] lost on a claim to an individual plaintiff, subsequent plaintiffs could use offensive collateral estoppel to prevent … [defendant] from litigating the issue." *Gunnells v. Healthplan Servs.*, 348 F.3d 417, 427 (4th Cir. 2003) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331, 99 S. Ct. 645, 58 L. Ed. 2d 552 (1979)).  By contrast, should Bowater prevail against only the named Plaintiffs in its contention that the Bedard document has no effect on any of the collective bargaining agreements, this determination "would have no binding effect on future plaintiffs because the plaintiffs would not have been party to the original suit.  *Gunnells*, 348 F.3d at 427 (citing *Allen v. McCurry*, 449 U.S. 90, 95, 101 S. Ct. 411, 66 L. Ed. 2d 308 (1980) ("The concept of collateral estoppel cannot apply when the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate that issue.")). Collateral estoppel thus is a double-edged sword for a defendant.  As the *Gunnells* court further noted, a defendant

> benefits more from class certification than the Plaintiffs in some ways, since the effect of
> class certification on collateral estoppel redounds to the benefit of defendants, not
> plaintiffs, whereas the beneficial economies of class certification redound to all parties, as
> well as to the courts.  One suspects, therefore, that … Defendants resist[] certification in
> an attempt to keep Plaintiffs with relatively small claims out of court altogether --
> precisely the problem the class action mechanism was designed to address.

## VI.  Plaintiffs' Fiduciary Duty Claims

Count IV of Plaintiffs' Third Amended Complaint alleges breach of fiduciary duties in violation of ERISA against Bowater.  Specifically, Plaintiffs allege that Bowater (1) failed to provide notice of plan termination to any of the putative class members; and (2) failed to communicate to the Plans' participants (a) that there would be a shift in responsibility for funding the first $102 million of retiree health and welfare benefits from Bowater to Inexcon and (b) that Inexcon was undercapitalized and not capable of meeting the retiree health and welfare obligations it assumed.  Third Amended Complaint ¶ 76.  While acknowledging that the fiduciary duty claim presents individual issues of reliance, Plaintiffs urge the Court to focus on alleged common issues including whether statements made by Bowater in 1999 were truthful and made in a fiduciary capacity.  *See* Plaintiffs' Reply at 11.  On these lines, Plaintiffs suggest, "if the Court decides the common fiduciary issues in our favor, the Court could enter an order on those issues and then allow individual actions so that each person who claims reliance on Bowater's written representations can attempt to prove his or her case in subsequent proceedings." *Id.*  The Court fails to see how such a course of action suggests that the claims of the representative parties are typical of claims of the putative class.  *See* Fed. R. Civ. P. 23(a).[14]  Because individual issues of reliance will be probative to resolution of any ERISA fiduciary duty claim, the Court finds that class certification of Count IV of Plaintiffs' Third Amended Complaint is not appropriate.  *Accord In re Elec. Data Sys.*

---

*Gunnells*, 348 F.3d at 427 n.4.  The Court finds the *Gunnells* rationale persuasive and applicable here. Because the impact of the Bedard document applies to all Plaintiffs asserting a LMRA claim, it is to the benefit of all parties and the Court to resolve this issue once for the entire class.

[14] Furthermore, the Court does not find that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).

*Corp. "ERISA" Litig.*, 224 F.R.D. 613, PIN (E.D. Tex. 2004) (holding that breach of fiduciary duty claim under ERISA not suitable for class certification because individual issues of reliance predominate over any common claims); *In re Unisys Corp. Retiree Med. Benefits Litig.*, 2003 U.S. Dist. Lexis 1577 (E.D. Pa. 2003) (decertifying ERISA breach of fiduciary duty class action because individual issues pervade).

## VII.  Timing

One final point warrants consideration at this stage of the litigation.  In supplemental briefing, Plaintiffs have asked the Court to shorten the amount of time provided in the Code of Federal Regulations for Bowater to act on a claim for benefits and an appeal of an adverse benefit determination.  *See* 29 C.F.R. 2560.503-1(f)(2)(iii)(B) (providing that the plan administrator shall notify the claimant "of the plan's adverse benefits determination within a reasonable period of time, but not later than 30 days after receipt of the claim"); 29 C.F.R. 2560.503-1(i)(2)(iii)(A) (providing that the plan administrator shall notify the claimant of the plant's benefit determination on review within a reasonable period of time … not later than 60 days after receipt by the plan of the claimant's request for review of an adverse benefit determination.").  Plaintiffs make this request for shortened review time in order to expedite the administrative remedies process for putative class members who wish to participate in this litigation.  Moreover, Plaintiffs contend that Bowater is simply using form denial letters to decide all appeals submitted by unnamed class members in this case; thus, they allege that the thirty and sixty day periods are not "reasonable."  Plaintiffs also request that the Court reduce the amount of time for claimants to file an appeal.

Plaintiffs have provided the Court with no case law suggesting that this Court has the authority to modify the applicable federal regulations, and the Court is satisfied that it is not appropriate for it to undertake to do so.  Accordingly, the Court will not shorten the time period Defendants are afforded to respond to benefit requests and subsequent appeals of adverse benefit determinations, nor will the Court reduce the amount of time for claimants to file an appeal.[15]

The more appropriate course of action is to certify the class and set membership therein to include all persons who meet all of the elements of the class description (including specifically the exhaustion of those administrative remedies), <u>as of the date this Court acts on any dispositive motions in the case</u>.[16]  The Court specifically notes that, if, as a result of its action on dispositive motions, further proceedings, including trial, are required herein, it will be appropriate for the Court to consider, at the

---

[15] Because all class Plaintiffs must exhaust their administrative remedies, claimants wishing to participate in this action have incentive enough to timely complete the administrative process without an order of the Court.  As the Court noted *supra*, all parties are expected to proceed through the administrative process efficiently and without unnecessary delay.

[16] Bowater takes the position that the cut-off date for inclusion in the class by reason of satisfaction of the requirement that administrative remedies be exhausted should be the date that disposition motions are due to be filed in this case.  The Court believes the proper date is the date on which the Court <u>acts on</u> any such dispositive motions.  That date will give a maximum time period for putative class members to qualify for membership in the class before any dispositive action is taken on the merits of the substantive claims made herein.  This will occasion no disadvantage to Bowater as action on the dispositive motions will bind all those who qualify for class membership by the latter date.  Any defenses that Bowater can assert on dispositive motions as against class members who qualify as of the filing date for dispositive motions will operate with identical force and effect as against those persons who qualify in the interim period between that date and the date on which the Court acts on the dispositive motions.

This interim cut-off date for qualification for class membership is necessary in order to avoid creating uncertainty as to the effect of court action on the dispositive motions that might be unfavorable to the class upon the claims and status of those putative class members who do not exhaust their administrative remedies before the Court acts on the dispositive motions and, therefore, are not qualified to be members of the class.  In view of Bowater's policy of strategic delay with respect to exhaustion of administrative remedies, the Court does not wish to create any impediment to their assertion in subsequent litigation of their claims that do not mature for inclusion herein.  The potential to amend membership in the class as may subsequently be appropriate on motion leaves open the opportunity to later bring into class membership, before trial, those who subsequently qualify for membership by exhausting their administrative remedies.

appropriate time, a motion to amend the class membership to include those putative class members who, subsequent thereto, complete the exhaustion of their administrative remedies.

## VIII.  Conclusion

For the reasons set forth above, it is **ORDERED** that Plaintiffs' Motion for Class Certification be, and it is hereby, **GRANTED** as to Counts I, II, and III, and is otherwise **DENIED**.  The Court certifies the following class:

**General Class.**  All persons who:

(1) were receiving company-paid health coverage from Great Northern Paper, Inc. prior to its 2003 bankruptcy, because (i) they had retired on pension when GNP was under the ownership of Bowater between January 1, 1992, and August 17, 1999, or in a short window period after the sale of GNP, extending to October 1, 1999; (ii) they were eligible spouses or dependents of such retirees; or (iii) their former spouse had died as an employee at GNP when it was under Bowater ownership -- and any individuals who became eligible spouses or dependents of such retirees after the bankruptcy, and

(2) prior to the date on which the Court acts on any dispositive motions herein, or, if none are filed, prior to the date of trial, submitted a claim for benefits to Bowater and either received from Bowater a letter denying his/her appeal of an adverse benefit determination or had an appeal pending before Bowater for more than 60 days without a denial thereof.

**Subclass A**: Those individuals who are members of the general class by reason of a retirement or a death of a union-represented employee that occurred before August 17, 1999.

**Subclass B**: Those individuals who are members of the general class by reason of a retirement or a death of a union-represented employee that occurred after August 17, 1999.[17]

---

[17] Subclasses A and B will be composed of members of the general class who also assert a claim under LMRA.  Because the Court will not certify Count IV of Plaintiffs' Third Amended Complaint, there is no need for Subclass D as proposed.  There also is no need for proposed Subclass C as retirees in that subclass do not present a LMRA claim and are able to assert their ERISA claim through inclusion in the general class.

It is **FURTHER ORDERED** that Class counsel shall advise the Court in writing

of the proposed method of notice to class members within 10 days of the date this

Order is entered on the docket.[18]


                                            /s/ Gene Carter
                                            **GENE CARTER**
                                            United States Senior District Judge

Dated at Portland, Maine this 21st day of June, 2005.

---

[18] Counsel will bear in mind in proposing this notice that notice should go to all putative class members.